IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GENE ANGUS,<br><br>        Plaintiff,<br><br>v.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDERS DENYING DEFENDANT'S MOTION TO EXCLUDE, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART, AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE, IN PART**<br><br>Case No. 1:21-cv-00034-JNP-JCB<br><br>District Judge Jill N. Parrish<br><br>Chief Magistrate Judge Jared C. Bennett |

This case arises from insurance claims for hail damage to two residential properties owned by Plaintiff, Gene Angus, and insured by Defendant, State Farm Fire & Casualty Company ("State Farm"). Angus advances four causes of action. His first two are "breach of contract" claims for Defendants alleged failure to meet the terms of the insurance policies on Plaintiff's properties. His second two are "breach of duty of good faith and fair dealing" claims deriving from Defendant's alleged breach of contract.

Before the court are State Farm's motion for summary judgment on all four claims and its motion to exclude expert witnesses. The court held an oral argument for these motions on September 26, 2022. At the conclusion of the hearing, the court took the motions under advisement. After considering the parties' written submissions and the arguments presented at hearing, the court denies State Farm's motion to exclude, denies State Farm's motion for summary judgment as to

1

Angus's breach of contract claims, and denies State Farm's motion for summary judgment without prejudice as to Angus's breach of implied covenant of good faith and fair dealing claims. The court also orders the parties to brief the issue of whether the court should certify a question regarding Plaintiff's breach of implied covenant of good faith and fair dealing claims to the Utah Supreme Court.

## BACKGROUND

On June 18, 2018, a significant hailstorm passed through Salt Lake City, damaging the roofs of two properties owned by Angus. ECF No. 30 at 2. The first damaged property was Angus's primary residence, which is located at 7291 South 1710 East, Salt Lake City, Utah (the "Primary Residence"). Angus contracted with State Farm for an insurance policy on this home from May 21, 2018 to May 21, 2019. ECF No. 33 at 3. The second damaged property was a residential rental located at 1634 East 7200 South, Salt Lake City, Utah (the "Rental Property"). Angus contracted with State Farm for an insurance policy on this building from May 5, 2018 to May 5, 2019. *Id*. at 4.

In the aftermath of the June 18 storm, Ted Van Duinen, a project manager at Infinity Roofing, approached Angus to inquire whether his properties' roofs had been damaged. ECF No. 20 at 3. Angus gave Van Duinen permission to inspect his properties and Van Duinen claimed to have discovered substantial hail damage. *Id*. As a project manager, Van Duinen's responsibilities included soliciting roofing jobs with homeowners, meeting with their insurance companies, overseeing repairs, and collecting insurance payments. *Id*. at 2.

On October 3, 2018, Angus and Van Duinen filed roof damage claims with State Farm for both properties. ECF No. 33 at 3. On October 5, 2018, State Farm retained Jeffrey Kerbow, a licensed independent adjuster, to inspect Angus's roofs. *Id*. That same day, Kerbow conducted his

inspections. *Id*. According to Angus, during the inspections, Kerbow refused to explain why he believed that certain parts of the Residential Property's roof were not damaged by hail even though Angus and Van Duinen believed they were. ECF No. 41 at 10, 13. Angus also alleges that Kerbow denied that the Rental Property was damaged at all. Moreover, Angus claims that Kerbow refused to answer any questions about his damage estimate methodology and conclusions. *Id*.

On November 15, 2018, State Farm responded to Angus's Primary Residence claim by sending a check for $8,340.65. ECF No. 33 at 3. Accompanying the check was a letter explaining that State Farm was reimbursing Angus for a partial roof replacement because Kerbow had not observed hail damage on every slope of the Primary Residence or in its rain gutters. *Id*. On November 23, 2018, State Farm responded to Angus's Rental Property claim by sending a check for $487.74. *Id*. at 5. Accompanying this check was a letter explaining that State Farm was reimbursing Angus for minor repairs because Kerbow had found little hail damage to the property. *Id*.

On October 2, 2019, Matthew Jenson allegedly emailed State Farm, on behalf of Angus, to request an appraisal of both properties pursuant to Angus's insurance policies. *Id*. at 11, 13. Jenson is a public adjuster and the sole owner of Utah Public Adjusters. *Id*. Both the Primary Residence and Rental Property insurance policies contain the following appraisal provisions:

> Appraisal. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be

paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

*Id*. According to Plaintiff, State Farm refused to conduct the requested appraisals and failed to explain why it did not wish to participate in the appraisal process. *Id*. at 11, 14.

On April 9, 2020, Angus signed a contract to hire Jenson as his public adjuster. *Id*. On April 17, 2020, Jenson emailed State Farm to inform it that he now represented Angus. ECF No. 33 at 3, 5.  He also explained he was contesting State Farm's initial insurance payouts. Jenson argued that Angus's Primary Residence needed a full roof and rain gutter replacement, which would cost $47,066.62, and that Angus's Rental Property required $51,262.29 worth of repairs. *Id*. Moreover, Jenson enclosed a copy of his contract with Angus. *Id*. The contracted entitled Jenson to 10% of State Farm's payout. *Id*.

On May 1, 2020, State Farm adjuster Brent Spradley reinspected both properties jointly with Mr. Jenson. *Id*. at 4, 5. As a result of the reinspection of the Primary Residence, State Farm increased its damage estimate to $23,453.30. *Id*. at 4. On May 27, 2020, it sent Angus a letter containing a check for $9,635.48, an updated estimate, which now included a full roof replacement, rain gutter replacement, and patio cover replacement, and a note advising that it would pay the rest of the estimate upon completion of roof repairs. *Id*.

State Farm also increased its estimate on Angus's Rental Property to $25,548.55. *Id*. at 5. On May 27, 2020, it sent Angus a letter containing a check for $17,806.99, an updated estimate, and a note advising that it would pay the rest of the estimate upon completion of the roof repairs. *Id*.

On receipt of these letters, Angus was still concerned that State Farm's estimate did not cover the actual value of the damage to his roof. ECF No. 41 at 12.  He was particularly frustrated by the discrepancy between Kerbow's initial estimate and Spradley's supplemental estimate. *Id*.

On June 11, 2020, Jenson responded to both letters by email. *Id*. at 4-6. He explained that his client was unwilling to accept State Farm's supplemental damage estimates because they were only around half the amount of his estimates. *Id*. On July 1, 2020, State Farm replied to each claim separately. *Id*. With respect to the Primary Residence, State Farm noted that "[i]t does not appear we are denying any damages our insured has claimed. We have addressed a similar scope of damages. The differences are in how to address the damages, prices and Measurements." *Id*. at 4. With respect to the Rental Property, State Farm sent a check for an additional $3,658.33 and explained that "an additional amount of $7,728.34 is available to you for replacement cost benefits and may be claimed upon completion of repairs." *Id*. at 6.[1]

On February 24, 2021, Angus filed this action in the District of Utah. *Id*. Soon thereafter, he served his Rule 26 disclosures and identified the following damages: 1) the cost of repairs, 2) the public adjuster's 10% fee, and 3) a 35% attorney's fee. *Id*. On October 12, 2021, Angus served his expert disclosures and identified Ted Van Duinen and Matthew Jenson as "non-retained experts." *Id*. Angus expects Jenson to testify that

> hail on the date of loss damaged the property and that the entire roofs including sheathing needs to be replaced as a result of damage from the storm. Mr. Jenson is also expected to testify that the properties cannot be properly repaired as provided by Defendant's repair estimate and cannot be properly repaired for that amount. Mr. Jenson is also expected to testify that the cost to repair the properties is in accordance with the Utah Public Adjusters estimate produced with Plaintiffs' Initial Disclosures . . . and that the damaged property is as reflected in that report. Mr. Jenson is also expected to testify that Defendant did not act in good faith in handling and evaluating the claim and failed to adhere to insurance adjusting standards and industry customs in adjusting the claim.

*Id*. at 4-5. Angus expects Van Duinen to testify that

> hail on the date of loss damaged the properties and that the entire roofs need to be replaced as a result of damage from the storm. Mr. Van Duinen is also expected to

---

[1] The letter notes that State Farm provided an additional $7,728.34, but this is incorrect. The actual increase between the second and third estimates is $6,132.85. ECF No. 41 at 7.

testify that the properties cannot be properly repaired as provided by Defendant's repair estimate and cannot be properly repaired for that amount. Mr. Van Duinen is also expected to testify that the cost to repair the property is in accordance with the Utah Public Adjusters estimate produced with Plaintiffs' Initial Disclosures . . . and that the damaged property is as reflected in that report.

*Id*. at 5.

Both Jenson and Van Duinen were deposed on September, 3, 2021. ECF no. 20 at 2, 4. During his deposition, Van Duinen explained that he is paid "strictly commission," as he receives 50% of the profit from any job he secures. *Id*. at 3. Van Duinen admitted that he had referred Angus to Utah Public Adjusters and that "[i]f they get everything approved and then I get a roofing job out of it, I benefit from that." *Id*. Finally, Van Duinen acknowledged that, "as a commissioned guy," he had "a financial interest" in the claims that he worked on. *Id*.

During his deposition, Jenson made the following admissions:

Q. Do you acknowledge that the higher the dollar figure paid on the claim, the more money you get?
A. Yes . . .
Q. And do you acknowledge that you have a financial interest in the outcome of this lawsuit?
A. Yes.
Q. The bigger the settlement or award in this lawsuit, the bigger your share will be; is that right?
A. That is correct.
. . .
Q. And as a public adjuster, you're an advocate; is that right?
A. Yes.

*Id*. at 4.

Neither Van Duinen nor Jenson has ever testified as an expert in state or federal court, *Id*. at 3, 4, and, according to Plaintiff, neither were hired with the intent that they would have to serve as expert witnesses. ECF No. 30 at 3, 4.

**LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant meets this burden, it then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). When applying the summary judgment standard, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

## ANALYSIS

The court first turns to the evidentiary issues presented by the parties in this case, deciding Defendant's motion to exclude and then all other evidentiary objections in turn. Subsequently, the court analyzes Defendant's motion for summary judgment on Plaintiff's breach of contract and breach of implied covenant of good faith claims.

## I.    MOTION TO EXCLUDE

This case foundationally relies on the observations of Ted Van Duinen, a project manager at Infinity Roofing, and the adjusting of Matthew Jenson, the owner of Utah Public Adjusters. State Farm seeks to exclude Van Duinen and Jenson as witnesses because they both have a financial stake in the outcome of the pending litigation. The court declines to bar either individual from serving as an expert witness.

District Courts have "'wide latitude' in deciding whether to exclude expert testimony." *Hall v. Conoco Inc.*, 886 F.3d 1308, 1311 (10th Cir. 2018) (citing *Bitler v. A.O. Smith Corp.*, 400 F.3d

1227, 1232 (10th Cir. 2005)).[2] Under Fed. R. Civ. P. 702, a qualified expert witness may give opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"But before expert testimony can be admitted, the district court must determine that the proposed testimony is reliable." *Hall*, 886 F.3d at 1311 (*citing Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589, 113 (1993)).

"The majority of courts . . . have held that testimony of expert witnesses whose compensation is contingent upon the outcome of the case must be excluded." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHX), 2014 WL 10894452, *4 (C.D. Cal. Oct. 31, 2014) (internal quotations omitted); *see also Straughter v. Raymond*, No. CV 08-2170 CAS CWX, 2011 WL 1789987, at *2 (C.D. Cal. May 9, 2011); *Hulstedt v. City of Scottsdale*, No. CV–09–1258–PHX–GMS, 2012 WL 171427, at *1 (D. Ariz. Jan. 20, 2012) (as to "whether an expert, retained on a contingency basis, is permitted to testify in federal court … the majority rule in most jurisdictions prohibits such testimony."); *Farmer v. Ramsay*, 159 F.Supp.2d 873, 883 (D. Md. 2001) (striking expert report because expert retained on contingency fee agreement). Such arrangements are generally considered "against public policy," *Accrued Fin. Servs., Inc. v. Prime*

---

[2] Plaintiff claims that State Farm's motion is not a motion to exclude, but rather a motion in limine. If this were the case, Angus believes the court should reject State Farm's motion on the grounds that "[a] motion in limine is traditionally disfavored because questions of admissibility should be dealt with at trial." *Biscayne Cove Condo. Ass'n Inc. v. QBE Ins. Corp.,* No. 10-23728-CIV, 2013 WL 2646828, at *3 (S.D. Fla. June 12, 2013). The court declines to kick the evidentiary can down the road and instead exercises the discretion that Tenth Circuit precedent has clearly indicated it possesses. *See Hall*, 886 F.3d at 1311.

*Retail, Inc.*, 298 F.3d 291, 300 (4th Cir. 2002), because "[a]n expert witness should never become one party's expert advocate." *Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, No. CIV.JFM-99-2573, 2000 WL 976800 (D. Md. June 19, 2000), *aff'd*, 298 F.3d 291. Ultimately, "[a]n expert's role is to assist the trier of fact by providing information and explanations." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 687 (S.D.N.Y. Jan. 28, 2003). An expert cannot credibly fulfil this role when paid on a contingency fee basis.

The court first considers whether the proposed experts do, in fact, have contingent interests in the outcome of this litigation. State Farm asserts that Van Duinen has a contingent interest in the outcome of this case. Van Duinen initiated this dispute when he sought out Angus with the understanding that he would be awarded 50% of the profit on any repair job he could fund through an insurance policy. ECF No. 20 at 1. When State Farm disagreed with Van Duinen's assertion that Angus's roofs needed full replacement, Van Duinen referred Angus to a public adjuster to secure his own higher payout. ECF No. 20-1 at 21:24-22:3. Ultimately, Defendants allege that the amount Van Duinen will be paid for roof repairs is entirely dependent on the jury's verdict if this case goes to trial. If Van Duinen can convince jurors that his analysis of the damage to Angus's roofs was correct, he stands to receive a larger payout. Van Duinen seems to recognize this dynamic. When asked if he had "a financial interest in the claims that [he] work[ed] on," Van Duinen replied "Yes." *Id*. at 22:8-11.

State Farm also asserts that Jenson has a contingent interest in the outcome of this case. When Angus hired Jenson as his public adjuster, he agreed to pay Jenson 10% of whatever insurance money State Farm awarded for roof replacement on his properties. ECF No. 20 at 4. Like Van Duinen, the amount Jenson will be paid for his adjusting services is entirely dependent on the jury's verdict. Indeed, in his deposition, Jenson agreed that he has "a financial interest in

the outcome of this lawsuit" and "[t]he bigger the settlement or award in this lawsuit, the bigger [his] share will be." *Id*. Moreover, Jenson admitted that "as a public adjuster," he is an "advocate" for Angus. *Id*. Ultimately, the court recognizes that both of Angus's potential expert witnesses have a contingent interest in the outcome of this case.

Nevertheless, the fact that Plaintiff's proposed experts have a contingent interest in the case does not automatically bar them from testifying as expert witnesses. Plaintiff offers compelling evidence to suggest that experts with contingent *interests* are distinguishable from experts that are paid a contingency *fee* for their testimony. Specifically, Angus cites *Lewis v. Allstate Ins. Co.*, which held that courts should not exclude public adjusters as expert witnesses. No. 3:15-CV-8074-HRH, 2016 WL 11513611, at *2 (D. Ariz. Dec. 2, 2016) (citing *Solar Utilities Network, LLC v. Navopache Electric Cooperative, Inc.*, 12-CV-8095-PCT-PGR 2015 WL 5693548, at *4-5 (D. Ariz. Sep. 29, 2015). *Lewis* analogizes public adjusters, and other experts who have only a contingent interest in the outcome of a case, to principal owners of a joint venture who must testify about their business as expert witnesses at trial. *Id*. This is based on the idea that, in both cases, the events that created the contingent payout came about *before* litigation was contemplated.[3] *Id*. Courts generally will allow owners to testify as experts even though they stand to gain significantly if they can convince a jury to side with them. *Id*. Angus argues the court should act consistently and treat public adjusters the same as it would business owners.

Angus also cites *Rodriguez v. Geovara Specilty Ins., Co.*, which similarly declined to exclude the expert testimony of a public adjuster who had a contingent financial interest in the

---

[3] In a footnote, Defendant argues that Plaintiff contracted with Van Duinen and Jenson with the understanding that this case would likely enter litigation because many of Utah Public Adjuster's cases end up in court. This may be true, but in making an evidentiary ruling the court declines to speculate on Plaintiff's mindset or knowledge of the fact that the case was likely to enter litigation.

outcome of a case. No. 1:18-cv-23585-UU, 20129 U.S. Dist. LEXIS 227349 (S.D. Fla. Oct. 22, 2019). *Rodriguez* adds gloss to the holding from *Lewis*. Specifically, it notes that "[t]o the extent [the public adjuster] might be incentivized to inflate his estimate and testify in a way that would maximize his own recovery, [the defendant] can and should bring this motive out on cross-examination." *Id.* at *5. Rodriguez recognizes that expert witnesses are often biased in one way or another. The remedy, however, is not to exclude every potentially unreliable expert. If courts were to aggressively police experts for bias, too many useful witnesses would have no opportunity to share their specialized and technical knowledge with juries. Rather, courts should exclude witnesses in only the clearest cut cases, such as when a litigant *explicitly* pays a contingency fee *for testimony*. *Rodriguez* stands for the proposition that, at least in the context of insurance, courts should err on the side of letting a well-informed jury determine the credibility of an interested expert witness.

In addition to the case law presented by Angus, the court is also persuaded by the reasoning of Judge Campbell's recent decision in *Healy-Petrik v. State Farm Fire & Cas. Co.*, No. 2:20-CV-00611-TC-JCB, 2022 WL 464220, at *7 (D. Utah Feb. 15, 2022).[4] Interestingly, it involved the same Defendant, State Farm, and one of the two expert witnesses at issue here, Jenson. In *Healy-Petrik*, Judge Campbell held that Jenson should not be barred from testifying as an expert witness due to his contingent interest in the case.[5] *Id.* The decision looked to Utah law for guidance and found that in this state, "public adjusters may be paid by a contingency fee. Utah Code Ann. § 31A-26-402(1). But '[a] plaintiff or defendant in a civil action may not engage an expert witness by means of a contingent fee agreement unless approval is sought and received from the court.'

---

[4] This decision was filed after the parties briefed Defendant's motion to exclude.

[5] Jenson was barred from testifying on other grounds. *Healy-Petrik*, 2022 WL 464220, at *10.

Utah Code Ann. § 78B-1-152(2)." *Id.* Judge Campbell noted that these two provisions were in tension, but neither spoke to whether an expert witness paid with a contingent interest must be excluded from testifying.[6] *Id.* Ultimately, she decided not to bar Jenson from testifying as an expert because of his contingent interest since as plaintiff's only expert witness, "[e]xcluding him for the contingency fee alone would doom" plaintiff's case. *Id.* Moreover, she reasoned that because Jenson had not changed his estimate for litigation, he had enough credibility to reliably testify. *Id.*

    This case presents similar facts and considerations. First, Angus will need at least one expert witness to support his claims, so excluding both Van Duinen and Jenson would "doom" his case.[7] Second, Plaintiff assures the court that Jenson has not changed his estimations of the damage to the roofs in question in preparation for litigation and defendants do not argue that Van Duinen will change his stated observations about the roofs for litigation. ECF No. 30 at 3. The facts of this case bear a striking relation to those in *Healy-Petrik* and they merit a similar evidentiary outcome on this issue.

    To counter Plaintiff's public adjuster case law, Defendant argues that it does not matter whether an expert is retained before, after, or specifically for litigation. To State Farm, the result of a contingency interest in the case is the same no matter when it is established—allowing an

---

[6] This court reads Utah Code Ann. § 78B-1-152(2) slightly differently than *Healy-Petrik*. The statute does not categorically ban contingency fee expert testimony, rather it requires court approval for this testimony. This gives the court discretion to choose whether to allow contingency fee testimony or reject it on a case-by-case basis, cutting against adoption of the so-called "majority rule" automatically banning contingency fee testimony.

[7] One could argue that this court could exclude Van Duinen and Jenson and allow Plaintiff to choose an expert that is not compensated using a contingency fee. The court sees little reason to do this. Realistically, whomever Plaintiff chooses as a new expert will have a similar incentive to testify in support of Angus's claims because he will not be hired as a witness if he does not advocate for his position. Additionally, excluding the testimony of Van Duinen and Jenson would deprive the jury of helpful testimony from the individuals who produced the insurance claims and estimates that catalyzed this case. In short, ordering Angus to find a new witness would not increase the reliability of his experts, but it would reduce the quality of evidence presented to the jury.

unreliable expert to testify. In support of this proposition, State Farm cites *Everett Cash Mut. Ins. Co.* v. *Gibble*, a case decided by the Pennsylvania Court of Common Pleas. 2004 WL 5149339 (Pa. Ct. Common Pleas 2004). *Gibble* held that when a public adjuster takes a contingent interest in a claim, his opinion is "so undermined as to be deprived of any substantial value" and, therefore, the testimony must be excluded. *Id.* at 4. The court is not persuaded by this argument. The fact of the matter is that expert testimony in insurance cases is unreliable across the board. When State Farm brings Kerbow, its own expert witness adjuster, to the stand, he too will have a powerful incentive to deliver an unreliable opinion. As a repeat player in the insurance adjuster marketplace, if Kerbow fails to deliver testimony to State Farm's liking, State Farm likely will choose never to employ him again, depriving him of a substantial business relationship. Practically speaking, the difference in reliability between Van Duinen and Jenson, who are testifying about the work they performed prior to litigation, and Kerbow, who is testifying about work he performed prior to litigation, is not significant enough to justify excluding the testimony of one and not the other.

Defendants also respond to Angus's case law by pointing out that the Mississippi legislature has categorically banned contingency fee public adjusters from testifying as experts. Miss. Code Ann. § 83-17-523(2)(ii). This statute does little to persuade the court to rule against Angus's experts because neither the federal government, nor Utah, has passed such legislation. In fact, Utah law specifically endorses the employment of contingency fee public adjusters in insurance disputes prior to litigation, Utah Code Ann. § 78B-1-152(2), and allows judges to decide whether to allow contingency fee expert testimony. Utah Code Ann. § 78B-1-152(2).

After considering the foregoing arguments and the particular facts of this case, the court holds that Jenson, as a public adjuster, may be presented as an expert witness. However, this holding does not settle Defendant's entire motion. Van Duinen is not a public adjuster but rather a

project manager. The court must therefore decide whether to extend the public adjuster protections to Van Duinen since there is no specific case law on his particular professional vocation. Like a typical public adjuster operating on a contingency fee basis, Van Duinen contracted with Angus before parties contemplated litigation. Additionally, Van Duinen did not sign a contract with Angus with the understanding that he would be compensated for testifying as an expert witness. Moreover, like a public adjuster, Van Duinen provided pre-litigation services by estimating the value of damage to a property and petitioning an insurance company for payment of that value. As far as the court can ascertain, the key difference between Van Duinen and a public adjuster is that Van Duinen only receives payment once his employer has actually performed repairs on a roof. This extra step weakens the contingency between Van Duinen's payout and his testimony because Van Duinen only earns his fee if Infinity Roofing is selected to perform work on Angus's home. Angus indicates that he is not guaranteed to choose Van Duinen's company for repairs. Thus, if anything, the link between a jury verdict in favor of Plaintiff and a payout for Van Duinen is weaker than it would be if Van Duinen were a public adjuster. Since Van Duinen's work is similar to that of a public adjuster, he will be allowed to testify as an expert.

Van Duinen and Jenson have contingent interests in the outcome of this case. Nevertheless, the court is realistic about the fact that if it were to accept that all those who have an interest in the outcome of a case cannot serve as expert witnesses, it would have to exclude many useful categories of expert witnesses that commonly testify in federal court. The best path forward is to allow Van Duinen and Jenson to testify as expert witnesses. Though this decision may create new challenges for State Farm's defense, it is not without recourse. State Farm will still have every opportunity on cross-examination to persuade jurors that Van Duinen and Jenson are biased.

## II.     EVIDENTIARY OBJECTIONS

14

*a.  Plaintiff's Objections*

Angus advances two categories of evidentiary objections to State Farm's statement of facts. First, he objects to the use of facts supported by the statements of State Farm's licensed independent adjuster, Jeffrey Kerbow. ECF No. 41 at ¶ 3, 4, 14, & 15. Angus contends that State Farm may not use Kerbow's statements as evidence because it failed to mention Kerbow in its initial disclosures pursuant to Fed. R. Civ. P. 37(c)(1). The court overrules this objection because State Farm has produced evidence that it disclosed Kerbow in a supplemental disclosure on August 25, 2021. ECF No. 42-1. This disclosure was submitted to Angus well before the court's October 5, 2021 fact discovery deadline and six months before Defendant filed its motion for summary judgment.

Second, Angus objects that State Farm did not provide any foundation to establish that State Farm adjuster Brent Spradley knew that Jeffrey Kerbow had inspected Plaintiff's property. ECF No. 41 at ¶ 3, 4, 14, & 15. According to Angus, Spradley could not testify about Kerbow's actions because State Farm produced no evidence showing a relationship between the two men. The court also overrules this objection. In his declaration for the court, Spradley states that he was the State Farm adjuster who handled Angus's claim during the period that Kerbow served as State Farm's independent adjuster. ECF No. 33-1 at 2. This sworn statement is enough to establish sufficient foundation for the factual claim at issue.

*b.  Defendant's Objections*

State Farm objects to the facts contained in paragraphs numbered 15-21, 23-45, and 47-64 in Plaintiff's memorandum in opposition to the motion for summary judgment, ECF No. 41, on grounds that Plaintiff provided no evidence or exhibits in their support. While Plaintiff cited to the Jenson and Angus declarations in his brief, at the time State Farm filed its reply he had failed to

file those documents with the court. On September 20, 2022, the court ordered Plaintiff to file the Jenson and Angus declarations. He complied on September 21, 2022. Now that the Jenson and Angus declarations are in the record, the court finds that Plaintiff has submitted sufficient evidence to support the claims at issue. Thus, State Farm's objection is overruled.

### III.   BREACH OF CONTRACT CLAIM

State Farm moves for summary judgment on Angus's breach of contract claims by arguing that they are claims for which, "[i]n the absence of expert assistance, jurors would not likely possess the information or understanding necessary to make [key] assessments." *Jenkins v. Jordan Valley Water Conservancy Dist*., 321 P.3d 1049, 1052 (Utah 2013). In this variety of case, when "the plaintiff has failed to designate an expert in order to establish the applicable standard of care, summary judgment may be granted." *Callister*, 337 P.3d 1048-49 (Utah Ct. App. 2014). But Defendant's argument was contingent on the court's decision to exclude Van Duinen and Jenson as expert witnesses. Because the court declines to exclude these potential experts and Plaintiff will have experts to establish the applicable standard of care, the court denies State Farm's motion for summary judgment on Plaintiff's breach of contract claim.

### IV.   BREACH OF IMPLIED COVENANT OF GOOD FAITH CLAIM

State Farm moves for summary judgment on Plaintiff's implied covenant of good faith claims by arguing that Angus has failed to request damages separate and apart from breach of contract damages. The court analyzes this contention and ultimately determines that it hinges upon an issue on which "there appears to be no controlling Utah law." Utah R. App. P. 41. As such, the court denies Defendant's motion for summary judgment without prejudice and orders the parties to file briefing on whether it should certify the following question to the Utah Supreme Court:

"Can a plaintiff maintain an implied covenant of good faith and fair dealing claim for consequential damages that solely consist of attorney's fees and public adjuster's fees?"

The parties agree that Angus's breach of implied covenant of good faith and fair dealing claims are governed by a line of Utah Supreme Court cases derived from *Beck v. Farmers Ins. Exch*., 701 P.2d 795 (Utah 1985). In *Beck*, the Utah Supreme Court held that an implied covenant exists in every insurance contract. *Id*. at 801. This covenant "contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim." *Id*. If a party breaches this implied covenant, the opposing party may recover consequential damages. *Id*. Consequential damages include "loss of a home or business, damages flowing from bankruptcy, [or] mental anguish." *Campbell v. State Farm Mutual Automobile Insurance Co*., 65 P.3d 1134, 1168 (Utah 2001). They can also include attorney's fees. *Gibbs M. Smith, Inc. v. U.S. Fidelity & Guar. Co.*, 949 P.2d 337, 344 (Utah 1997).

In the present case, the court is likely to find that there is a genuine dispute of material fact over whether State Farm acted in bad faith when it allegedly rejected Plaintiff's request for an appraisal and when it allegedly failed to timely respond to Plaintiff's complaints and questions about Kerbow's initial estimate. But this alone is not enough to deny summary judgment. In addition to showing that State Farm acted in bad faith, Plaintiff must produce evidence that he suffered consequential damages as a result of State Farm's actions. *Beck*, 701 P.2d at 801. Angus claims that he suffered a consequential loss because State Farm's intransigence forced him to hire an attorney and a public adjuster. State Farm responds that a plaintiff must show that he has suffered consequential damages beyond fees and costs alone.

To lay the foundation for its consequential damages argument, State Farm cites *Blakely v. USAA Cas. Ins.*, an unreported federal district court opinion. *Blakely* held that "fees and costs … are not stand-alone damages sufficient to support a breach of the implied covenant claim." No. 2:06–cv–00506, 2015 WL 1522752, at *11 (D. Utah Apr. 2, 2015). The district court's finding in *Blakely* was affirmed in an unpublished Tenth Circuit opinion finding that "to be entitled to a fee award," a plaintiff "must prevail in advancing a theory of damages under the Implied Covenant independent of attorney's fees." 691 Fed. App'x. 526, 538 (10th Cir. 2017). The core flaw in State Farm's case for summary judgment is that neither of the *Blakely* cases are binding on this court. In cases arising under diversity jurisdiction, a federal court's task is to "ascertain and apply the state law" to the best of its ability. *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) (quoting *Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944)); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "In doing so, it may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007) (internal quotation marks and citations omitted). "Ultimately, however, the [c]ourt's task is to predict what the state supreme court would do." *Id*. Thus, the *Blakely* duo presents, at most, persuasive authority.

To determine whether it should follow the *Blakely* cases, the court examines their readings of state law closely. It ultimately finds that the *Blakely* cases' analysis of Utah Supreme Court precedent is quite thin. Of the two *Blakely* opinions, the district court's dives deepest into state

case law.[8] It does so by first citing *Neff v. Neff*, a case dealing with a breach of fiduciary duty in the context of a business dissolution. 247 P.3d 380 (Utah 2011). In *Neff*, the Utah Supreme Court held that "even if attorney fees ought to be available as consequential damages in all claims for breach of fiduciary duty, we decline the invitation to adopt such a rule where the party has failed to prove any damages resulting from the breach" apart from "the harm incurred in bringing a successful claim for breach of fiduciary duty." *Id.* at ¶¶ 88–89. If the court were to apply this principle to implied duty of good faith claims arising from insurance contracts, it could certainly grant summary judgment to State Farm here. The problem, however, is that the Utah Supreme Court has yet to apply *Neff* in the first party insurance context. This court is reluctant to make this leap absent higher court guidance. *Blakely* also cites *Holladay v. Storey*, another case dealing with a defendant's breach of fiduciary duties outside the context of insurance. 307 P.3d 584 (Utah Ct. App. 2013). As a decision from the Utah Court of Appeals, *Blakely's* application of *Holladay* is even less helpful than its use of *Neff*. Decisions from lower state courts are not binding authorities on federal courts ruling in diversity. *Wade*, 483 F.3d at 665-66. This is the full extent to which the *Blakely* cases analyze the question before this court. Ultimately, they fail to adequately answer the central question in Defendant's motion for summary judgment.

The court next turns to Angus's memorandum in opposition to determine if state case law provides a foundation for the idea that attorney's fees and public adjuster's fees can alone support an implied covenant claim. Plaintiff suggests that the court examine *Canyon Country Stores v.*

---

[8] The Tenth Circuit added little substantive analysis to the district court's holding. It simply deferred to the district court's analysis and confusingly cited *Highland Const. Co. v. Stevenson*, a pre-*Beck* case divorced from the implied covenant context, for the proposition that "[i]n any action brought upon either of the bonds provided herein ... the prevailing party, upon each separate cause of action, shall recover a reasonable attorney's fee to be taxed as costs." 636 P.2d 1034, 1038 (Utah 1981).

*Bracey* and *Zions First Nat'l Bank N.A. v. Nat. Am. Title Ins. Co.,* two cases holding that a plaintiff may be awarded attorney's fees as consequential damages for a breach of the implied covenant.[9] 781 P.2d 414 (Utah 1989); 749 P.2d 651 (Utah 1988). These cases do not convince the court that state law favors Angus. *Bracey* and *Zions* merely establish a legal principle that is not in dispute. State Farm does not disagree that fees and costs may be awarded if a plaintiff can establish additional consequential damages, such as emotional distress. Rather, it asserts that fees and costs are not enough *on their own* to support an implied covenant claim. Neither *Bracey* nor *Zions* speak to this challenge. In *Bracey*, the Utah Supreme Court held that a claim for recovery of fees "predicated on the theory that attorney fees were an item of consequential damages flowing from the insurers' breach of contract" is legitimate, but it went no further than that. 781 P.2d at 420. The Supreme Court never addressed the issue of whether fees and costs alone were sufficient to support an implied covenant claim because the plaintiff in *Bracey* had suffered additional consequential damages.[10] *Id*. at 419. In *Zions*, the Supreme Court also did not answer the question before this court. In dicta, it simply stated that "[a]ttorney fees incurred by an insured in suing its insurer because of [a] breach [of implied covenant] would be recoverable consequential damages because they plainly are reasonably foreseeable by the parties at the time the contract is made." 749 P.2d at 657. The Court, however, did not apply this rule to a situation where a plaintiff brought a claim for attorney's fees with no other consequential damages. Indeed, the court was *merely speculating* as to how it *might* decide *if* the plaintiff in the case had hypothetically brought an implied covenant claim. *Id*.

---

[9] Plaintiff also suggests that the court review *Collier v. Heinz*. 827 P.2d 982 (Utah Ct. App. 1992). He represents that *Collier* is a Utah Supreme Court case, but it is actually a Utah Court of Appeals case. As a result, the court does not consider its analysis. Even if it did, however, *Collier* simply summarizes the holdings of *Bracey* and *Zions*. 827 P.2d at 983-84.

[10] Additional consequential damages were based on a "lost profits" theory. *Id*. at 418.

Ultimately, a review of Plaintiff's case law indicates that the Utah Supreme Court has issued two broad holdings that do not actively undermine the idea that attorney's fees and costs can independently support an implied covenant claim. But the court is cognizant of the fact that Plaintiff has not cited a single case where a plaintiff based an implied covenant claim solely on attorney's fees and costs. *Zions* and *Bracey* were decided roughly 30 years ago. If these cases supported Plaintiff's theory, one would expect that an insured would have brought a claim with a similar fact pattern to the one at issue here.

In short, "there appears to be no controlling Utah law" on the question of whether a plaintiff can maintain an implied covenant of good faith and fair dealing claim for consequential damages that solely consist of attorney's fees and public adjuster fees. It also believes that this issue "is a controlling issue of law in [the] proceeding pending before the certifying court." *Id*. Pursuant to Utah Rule of Appellate Practice 41, the court may enter an order of certification to settle this question of state law. The court is inclined to enter such an order but wants input from the parties before doing so. Consequently, the court denies without prejudice State Farm's motion for summary judgment on Plaintiff's claims for breach of the implied covenant of good faith and fair dealing. The court invites the parties to file memoranda indicating why it should or should not certify this issue for review and suggesting the precise contours of the question to be certified.

## ORDER

For the reasons stated above, the court ORDERS the following:

1. The court DENIES Defendant's motion to exclude witnesses.

2. The court DENIES Defendant's motion for summary judgment on Plaintiff's breach of contract claims.

3. The court DENIES Defendant's motion for summary judgment without prejudice on Plaintiff's breach of implied covenant of good faith claims.

4. The court ORDERS the parties to brief it on whether it should certify to the Utah Supreme Court the issue of whether a plaintiff can maintain an implied covenant of good faith and fair dealing claim for consequential damages that solely consist of attorney's fees and public adjuster's fees. The parties have 21 days to file their memoranda.


DATED September 30, 2022.

BY THE COURT

Jill N. Parrish
United States District Court Judge

22